## Fleenor v. Commonwealth.

October 4, 1949.

Sampson & Sampson for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE CAMMACK—Reversing.

Lyle Fleenor was convicted of voluntary manslaughter and sentenced to two years' imprisonment. He is appealing on the grounds that: (1) he was entitled to a di-

rected verdict; and (2) the court erred in failing to include an instruction upon involuntary manslaughter. Convinced as we are that the evidence was insufficient to warrant the submission of the case to the jury, we shall confine ourselves to that contention.

Fleenor, the appellant, Lankford, the acquitted codefendant, Turpin, the deceased, Helton, a taxi driver, two women, who although married are referred to throughout the record by their maiden name of Saylor, and two companions of Turpin, Scarborough and Burchett, were present at a roadhouse known as the Blue Moon some time after midnight on the day of the alleged crime. About six or seven o'clock the previous evening, the appellant and his codefendant had placed a fish net in the river near the Seven Sisters Liquor Dispensary and had waited there until between eleven and twelve o'clock, at which time they ran the net. They then proceeded to the Blue Moon.

About 5:30 or 6:00 a. m. Fleenor and Lankford left with the Saylor girls, one of whom had previously declined to get a girl for the deceased on the ground that twice before when Turpin had attempted to get the girl another man had drawn a gun on him. The others followed in Helton's cab and overtook them, and at least on one occasion the deceased grabbed the keys and steered the car across the highway so as to stop Lankford's car. On that occasion the deceased went to the car and attempted to persuade the Saylor girl to procure the other woman for him. The witnesses for the prosecution stated that both Fleenor and Lankford drew guns and that Fleenor then stated to the deceased that if the deceased did not let him alone, he would kill him. This is denied by both Fleenor and Lankford. Lankford's car then pulled around the cab and proceeded to the Seven Sisters. The cab driver testified that he attempted to persuade the deceased to go home but that he insisted on going to the Seven Sisters first. On arriving at the Seven Sisters they again encountered the other party. Both groups then went to the river bank apparently to see a fish which Fleenor had taken from the net earlier. While on the river bank, according to the testimony of Scarborough and the Saylor girls, Fleenor offered Scarborough a drink and the deceased

snatched the bottle and took a drink, whereupon Fleenor remonstrated.

Scarborough said he then warned Burchett that they had better leave and that they went up the bank to the road and that the deceased followed them. Scarborough attempted to give the deceased bus fare but the latter stated he was going back and get the others to take him home. Scarborough and Burchett started up the road and the deceased went toward the river. When they had gone only a short distance, they noticed that the deceased had returned to the highway and was attempting to thumb a ride. A driver who picked up Scarborough and Burchett asked them what was wrong with the fellow with a bandage on his head who had attempted to thumb a ride with him. These witnesses stated the last they saw of the deceased he was standing on the highway.

Each of the Saylor sisters told of the whiskey episode, but their testimony as to subsequent events differs somewhat. The first to testify, after relating the whiskey incident, stated that Fleenor and the deceased got into a "bad" argument and that Fleenor drew his pistol as if he were going to hit deceased. She and her sister then ran to an outdoor toilet, where they stayed "just a minute" and went on up to the car. She further stated that no one came up the path while they were in the toilet, but admitted that someone could have come through the woods or the corn field without being observed. According to her testimony, Fleenor and Lankford came to the car and Fleenor stated in substance that the deceased would not bother them any more. She stated that they then returned to the river to run the net, but when asked if this occurred after the gun episode, she said it did not. She then testified that they ran the net first and that when they came back the deceased was standing on the bank. Later on redirect examination, she affirmed the second version.

The other Saylor girl followed her sister on the stand and also described the "whiskey episode" and Scarborough's and Burchett's departure. She then described the "gun episode" and her flight to the toilet. She said she and her sister stayed in the toilet about five minutes and that she doubted that they could have seen anyone coming up the path. According to her testimony,

they then proceeded to the car, where they were joined by Fleenor and Lankford, who cautioned them not to say anything and stated that they would not be bothered by the deceased again. She said they then ran the net. On cross-examination she said she was positive that she did not see the deceased when they ran the net, which is in conflict with the testimony of her sister. The testimony of both girls indicates that the "gun episode" followed immediately on the heels of and as a result of the "whiskey episode." If this be a fact, and if the uncontradicted testimony of Scarborough is true, it would seem that the deceased was seen alive after Fleenor allegedly threatened him with the gun.

In substantiation of Scarborough's testimony as to the deceased following him to the road, there is the testimony of Josie Miracle, who lived nearby, that she saw the deceased follow the other two; that after unsuccessfully attempting to thumb a ride, he returned to the dispensary and asked the husband of the witness if Bill was in there and upon receiving a negative reply went toward the river. She stated that she did not see him return, although she saw the others when they left. The husband of Mrs. Miracle, a defense witness, also stated that the deceased came to the liquor dispensary about 6:30 and asked for Bill and when told he was not there, started toward the highway. This witness further stated that Fleenor, Lankford and the Saylor girls left a little after 7:30.

Three witnesses for the defense, one of whom worked at the Seven Sisters, one a garage mechanic who was bringing the first witness to work in order to return the car to the garage for servicing, and one who was proceeding to another dispensary to secure liquor, testified that they passed the car containing Fleenor and others and that later they saw the deceased on the highway in the vicinity of the Seven Sisters.

The deceased had been in a fight at a roadhouse a few days previous to the day in question and as a result he had at least three wounds on his head, one in the back and one on each side. There is much confusion among even the Commonwealth's witnesses as to the extent his head was bandaged. When found entwined in a trotline in the river near the Seven Sisters, some 36 hours after he

was last seen, the body of the deceased had these three wounds which had been treated and one frontal wound about two inches inside the hair line which showed no evidence of treatment. Scarborough testified that when he talked with the deceased on the road he saw blood in his hair. While the Saylor sisters and the parents of the deceased testified that he had no wound on the front of his head, none of these witnesses claim to have seen the deceased after the "gun episode."

The doctor who performed the autopsy testified he was unable to determine the cause of death. He testified as to the one untreated and the three treated wounds but stated that there was no fracture of the skull. While he stated a concussion was possible without a fracture, he said it was more probable in cases where there was a fracture. This front wound was about 2½ inches in length and had cut the scalp. The doctor stated that while the tests were inconclusive, drowning could have been the cause of the death.

The evidence clearly shows that the deceased was drunk, and there is evidence that the Saylor sisters had been drinking. There is no evidence that either Fleenor or Lankford was under the influence of liquor. All the altercations detailed by the prosecution witnesses, and they are all in accord, are denied by Fleenor and Lankford, but if they did occur, it seems clear that the deceased was the aggressor in each instance. Both Fleenor and Lankford admit that they had guns, but Fleenor said his gun was in the glove compartment of the car and that upon reaching the river he placed the gun in his belt and did not remove it.

After the deceased's disappearance was known, Fleenor voluntarily went to the home of the parents of the deceased. The evidence is in dispute as to what he said on that occasion. The parents state that Fleenor said he had not been with the deceased and that the last time he saw him was when he took a taxi going towards Pineville. On the other hand, Fleenor said he told the parents that he last saw the deceased starting towards the highway with Scarborough and Burchett.

Witnesses assigned to the Saylor sisters bad reputations for morality and veracity and also a bad reputation to the deceased for tranquillity.

There was no showing that the deceased met his death as the result of foul play. There is no evidence that Fleenor at any time struck the deceased. But conceding to be true the girls' testimony that Fleenor threatened to hit the deceased with a gun and assuming that the blow was struck, the evidence renders inescapable the conclusion that such, if it did occur, was the immediate aftermath of the "whiskey episode" and the uncontradicted testimony of three witnesses places the deceased on the highway thereafter. Three other witnesses stated that they saw the deceased alive after Fleenor had left the vicinity of the tragedy. The medical testimony is inconclusive as to the cause of the death. It could have been the result of a blow, or drowning, or perchance have resulted from some other cause. In view of the deceased's drunken condition, it is certainly within the realm of possibility that he could have accidentally fallen in the river and thereby have met his death. The only other evidence which might tend to associate Fleenor with any crime is the statement allegedly made by him to the effect that the girls would not be troubled by the deceased any more. Such a statement is, of course, not an admission and may have been nothing more than an expression of relief over the departure of a drunk by one who had become exasperated by his night-long antics.

Under the circumstances, we do not feel it can be said that the deceased met his death at the hands of Fleenor, and to permit the jury to do so would be to allow it to speculate with the liberty of one who although accused is presumed to be innocent until the contrary is shown beyond a reasonable doubt. Witt v. Commonwealth, 305 Ky. 31, 202 S. W. 2d 612.

The judgment is reversed with directions that it be set aside and a new trial granted, at which, if the evidence is the same, a verdict shall be directed for Fleenor.